IN THE UNITED STATES DISTRICT COURT
DISTRICT OF KANSAS

Pamela Goodwin,

        Plaintiff,

v.                                        Case No. 02-2606-JWL

General Motors Corporation,

        Defendant.

## MEMORANDUM & ORDER

Plaintiff filed suit against defendant, her current employer, alleging that defendant, in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq., has retaliated against plaintiff based on her filing of a previous lawsuit against defendant and that defendant has harassed plaintiff based on her race. This matter is presently before the court on defendant's motion for summary judgment (doc. 32). As set forth in more detail below, the court grants in part and denies in part defendant's motion. Specifically, the motion is denied with respect to plaintiff's claim that defendant withheld her raises in retaliation for her earlier lawsuit and is otherwise granted.

## I.    Facts

The following facts are related in the light most favorable to plaintiff, the nonmoving party. Plaintiff is currently employed as a labor relations representative at defendant General Motor's Fairfax assembly plant in Kansas City, Kansas. At all times relevant to this lawsuit, plaintiff's supervisor was Tom Meier. Mr. Meier, in turn, was supervised by Art Westerfield, the general

supervisor of labor relations at the Fairfax plant.

On June 1, 1999, plaintiff filed a lawsuit against defendant alleging that defendant had engaged in discriminatory pay practices based on plaintiff's race. Specifically, plaintiff alleged that defendant routinely paid plaintiff less than it paid white employees who held the same position as plaintiff. In February 2001, while plaintiff's lawsuit was still pending, plaintiff filed a charge of discrimination with the EEOC and the Kansas Human Rights Commission alleging that defendant had retaliated against plaintiff based on plaintiff's filing of her lawsuit and that she was subjected to racial harassment in the workplace. Thereafter, she filed this lawsuit, her second lawsuit against defendant, alleging retaliation based on the first lawsuit and racial harassment.

According to plaintiff, defendant began retaliating against plaintiff as soon as she filed her lawsuit in June 1999, when defendant refused to give plaintiff a raise to which she was otherwise entitled. In that regard, defendant, at that time, had required its employees, prior to receiving annual raises, to sign a statement acknowledging that defendant did not owe the employee any additional compensation.[1] While plaintiff indicated that she would sign the form if she could write an additional comment on the form that would essentially reserve her right to pursue the claims in her lawsuit, defendant advised plaintiff that it would not accept the statement with any additional comments and she needed to sign the form as it was written. Plaintiff refused to sign the statement–in light of her pending lawsuit alleging discriminatory pay practices–and defendant then refused to give plaintiff her annual raise. Plaintiff similarly refused to sign the statement in 2000

---

[1]The record reflects that defendant has discontinued the practice of requiring employees to sign this statement prior to receiving annual raises.

and in 2001 and defendant, in turn, refused to give plaintiff her annual raises in those years. At some point in 2001, plaintiff signed the statement after defendant permitted her to do so while reserving her right to pursue her lawsuit. After signing the statement, plaintiff received the overall compensation increases that she had been refused since 1999, but she did not receive any back pay.

Additional facts will be provided as they relate to plaintiff's particular claims.


## II.      Summary Judgment Standard

Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Summary judgment is appropriate if the moving party demonstrates that there is "no genuine issue as to any material fact" and that it is "entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). In applying this standard, the court views the evidence and all reasonable inferences therefrom in the light most favorable to the nonmoving party. *Lifewise Master Funding v. Telebank*, 374 F.3d 917, 927 (10th Cir. 2004). An issue is "genuine" if "there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way." *Thom v. Bristol-Myers Squibb Co.*, 353 F.3d 848, 851 (10th Cir. 2003) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). A fact is "material" if, under the applicable substantive law, it is "essential to the proper disposition of the claim." *Id*. (citing *Anderson*, 477 U.S. at 248).

The moving party bears the initial burden of demonstrating an absence of a genuine issue of material fact and entitlement to judgment as a matter of law. *Id*. (citing *Celotex Corp. v.*

3

*Catrett*, 477 U.S. 317, 322-23 (1986)).  In attempting to meet that standard, a movant that does not bear the ultimate burden of persuasion at trial need not negate the other party's claim; rather, the movant need simply point out to the court a lack of evidence for the other party on an essential element of that party's claim. *Id.* (citing *Celotex*, 477 U.S. at 325).

If the movant carries this initial burden, the nonmovant that would bear the burden of persuasion at trial may not simply rest upon its pleadings; the burden shifts to the nonmovant to go beyond the pleadings and "set forth specific facts" that would be admissible in evidence in the event of trial from which a rational trier of fact could find for the nonmovant.  *Id.* (citing Fed. R. Civ. P. 56(e)).  To accomplish this, sufficient evidence pertinent to the material issue  "must be identified by reference to an affidavit, a deposition transcript, or a specific exhibit incorporated therein." *Diaz v. Paul J. Kennedy Law Firm*, 289 F.3d 671, 675 (10th Cir. 2002).

Finally, the court notes that summary judgment is not a "disfavored procedural shortcut;" rather, it is an important procedure "designed to secure the just, speedy and inexpensive determination of every action." *Celotex*, 477 U.S. at 327 (quoting Fed. R. Civ. P. 1).


III.    **Plaintiff's Retaliation Claims**

Plaintiff contends that defendant retaliated against her based on her filing of a previous lawsuit against defendant.    Specifically, plaintiff contends that defendant withheld raises that plaintiff had earned; failed to promote plaintiff to a Senior Labor Relations Representative position; terminated the employment of plaintiff's son; issued plaintiff a disciplinary memorandum; and subjected her to excessive supervision.    Defendant moves for summary

4

judgment on each of these claims.  The court addresses each one in turn.


A.      *Withholding Raises*

In the pretrial order, plaintiff asserts that she was denied routine salary increases in 1999, 2000 and 2001 in retaliation for her filing a lawsuit against defendant in June 1999.   According to plaintiff, defendant refused to give her the raises that she had earned because plaintiff refused to sign a document requiring her to acknowledge that she had no claim against defendant for additional compensation.   Of course, the subject of her June 1999 lawsuit involved defendant's allegedly discriminatory compensation structure.

In support of its motion for summary judgment, defendant first asserts that plaintiff's claim is barred by the doctrine of claim preclusion because plaintiff could have raised this argument in her prior lawsuit.  The court rejects this argument.  In *Mitchell v. City of Moore, Oklahoma*, 218 F.3d 1190, 1202 (10th Cir. 2000), the Circuit expressly agreed with "those courts holding the doctrine of claim preclusion does not necessarily bar plaintiffs from litigating claims based on conduct that occurred after the initial complaint was filed" and cited to this court's decision in *Johnson v. Board of County Comm'rs of Johnson County, Kansas*, 1999 WL 1423072, at *3-4 (D. Kan. Dec.9, 1999). *See id.* at 1202-03.  In *Johnson*, the plaintiff filed his first lawsuit alleging race and gender discrimination and that case was assigned to Judge VanBebber of this district. *See Johnson*, 1999 WL 1423072, at *1.   Four months after the plaintiff filed that suit, his employer allegedly retaliated against him in several respects. *Id.* The plaintiff did not attempt to amend his complaint or file a supplemental pleading to add a retaliation claim to his lawsuit.  Instead, he filed

a new charge of discrimination. *Id.* Two months after Judge VanBebber entered summary judgment in favor of the defendant on all claims in the first lawsuit, the plaintiff received a notice of right-to-sue with respect to his retaliation claims and filed a second lawsuit. *Id.*

The defendant in the second *Johnson* lawsuit filed a motion to dismiss the plaintiff's retaliation claims based on the doctrine of claim preclusion. *See id.* at *2. This court denied the motion on the grounds that "the facts underlying plaintiff's claims asserted here did not exist at the time plaintiff filed his complaint in Johnson I." *Id.* at *3. As this court went on to explain:

> Because a plaintiff has no obligation to expand his or her suit in order to add a claim that he or she could not have asserted at the time the suit was commenced, several circuits have held that res judicata does not bar a second lawsuit to the extent that suit is based on acts occurring after the first suit was filed.

*Id.* at *3 (citations omitted). Here, it is undisputed that plaintiff's retaliation claims did not arise until after she filed her first lawsuit. For the same reasons set forth by this court in *Johnson*, then, the court rejects defendant's argument that plaintiff's retaliation claim in this case is barred by the doctrine of claim preclusion. Defendant's motion for summary judgment, then, is denied on this issue.

Defendant next asserts that summary judgment is appropriate because plaintiff cannot identify any similarly situated employee who received compensation increases without signing the acknowledgment. Defendant, however, cites to no authority indicating that plaintiff, as part of a retaliation case, must compare herself to similarly situated employees. No such showing is required as part of plaintiff's prima facie case, *see Wells v. Colorado Dept. of Transp.*, 325 F.3d 1205, 1212 (10th Cir. 2003) (prima facie case of retaliation requires plaintiff to show that he

6

engaged in protected opposition to discrimination; he suffered an adverse employment action; and there is a causal connection between the protected activity and the adverse employment action), and the Circuit has expressly recognized that a plaintiff need not compare herself to similarly situated individuals to establish pretext. *See, e.g., Doebele v. Sprint/United Management Co.*, 342 F.3d 1117, 1137 (10th Cir. 2003) (district court erred in ruling that a plaintiff must show she was treated differently from other similarly situated employees to survive summary judgment; a plaintiff may not be forced to pursue any particular means of demonstrating that a defendant's stated reasons are pretextual). The court, then, rejects this argument, too.

Finally, defendant asserts that it had a legitimate, nonretaliatory reason for withholding plaintiff's raises and that plaintiff cannot establish that the reason is pretextual. According to defendant, the execution of the compensation statement was a mandatory prerequisite for the receipt of an annual raise and, during the relevant time period, no employee received a raise who did not also sign the statement. Plaintiff does not contest that signing the compensation statement was a prerequisite to receiving a raise. She highlights, however, that her previous lawsuit against defendant alleged discriminatory pay practices and alleged that defendant had routinely paid plaintiff less than it paid white employees who held the same position as plaintiff. Defendant, then, by requiring plaintiff to "acknowledge" that defendant did not owe her any additional compensation before it would give her an annual raise to which she was otherwise entitled, was essentially requiring plaintiff to choose between receiving her raise and pursuing her lawsuit. For if plaintiff signed the form, she would have been acknowledging that her lawsuit had no merit. In such circumstances, a reasonable jury could conclude that defendant refused to give plaintiff a

7

raise either because of plaintiff's filing of her lawsuit or because she refused to acknowledge that her lawsuit had no merit and that her refusal to sign the form was simply a good excuse to deny her the raise.

Defendant argues that plaintiff, to prevail on this claim, must show that "had she not been pursuing her claim of discrimination, but had simply refused to sign the compensation statement, she would have received her raises." The court disagrees. For the record suggests that plaintiff refused to sign the statement only because of her pending lawsuit. In other words, but for plaintiff's lawsuit, she would have signed the statement and she would have received her raises without question. Plaintiff's lawsuit, then, is inextricably intertwined with defendant's refusal to give her a raise. A jury must sort out whether defendant refused to give plaintiff a raise solely because she refused to sign the statement or whether defendant refused to give plaintiff a raise based, even in part, on the fact that plaintiff, in refusing to sign the statement, was refusing to acknowledge that her lawsuit had no merit. Defendant's motion with respect to this claim is denied.

B.      *Failure to Promote*

Plaintiff contends in her response to defendant's motion for summary judgment that defendant, in retaliation for her filing a lawsuit, failed to promote her to a Senior Labor Relations Representative position. Summary judgment on this claim, however, is appropriate as plaintiff admitted in her deposition that she had not applied for the position at any time after she filed her lawsuit in June 1999. *See Stover v. Martinez*, 382 F.3d 1064, 1072 (10th Cir. 2004) ("In order

8

for a plaintiff to assert that her employer retaliated against her by failing to . . . promote her, that employee must have applied for the position she was denied."). Moreover, defendant has come forward with evidence that the Fairfax plant simply did not promote any internal candidates from sixth-level positions as labor relations representatives to seventh-level positions as senior labor relations representatives. According to defendant, only those employees who transferred from other plants and were already classified as seventh-level received that salary grade at the Fairfax plant. Plaintiff offers no evidence suggesting that defendant's proffered reason is pretextual.

For the foregoing reasons, then, summary judgment is appropriate on this claim.


C.    *Terminating the Employment of Plaintiff's Son*

Plaintiff also claims that defendant terminated the employment of her son in retaliation for her filing the earlier lawsuit. The court grants summary judgment on this claim for two reasons. First, plaintiff has not suggested how she would have standing to bring this claim on behalf of her son. Second, even assuming plaintiff did have standing to bring the claim (or even if plaintiff's son had himself asserted the claim), this court has previously rejected such "third party" retaliation claims and, for the same reasons, does so here. *See Horizon Holdings, LLC v. Genmar Holdings, Inc.*, 241 F. Supp. 2d 1123, 1142-44 (D. Kan. 2002).


D.    *Issuing Disciplinary Memorandum*

In November 2000, Tom Meier issued a disciplinary memorandum to plaintiff for alleged acts of insubordination. The memorandum cautioned plaintiff that "further conduct of this nature"

might affect her employment status with defendant.   Defendant moves for summary judgment on this claim on the grounds that the memorandum did not constitute an adverse employment action. The court agrees.   Plaintiff in no way suggests that the memorandum had any effect on her employment status with defendant.   *See Sanchez v. Denver Public Schools*, 164 F.3d 527, 533 (10th Cir.1998) (unsubstantiated oral reprimands are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status).   While the memorandum essentially warned that future infractions could result in plaintiff's discharge, it is undisputed that plaintiff, more than four years after the issuance of the memorandum, remains employed with defendant and that defendant took no other action against plaintiff in connection with the memorandum.   Thus, no reasonable jury could conclude that the written reprimand is sufficient to constitute an adverse action.   *See Rennard v. Woodworker's Supply, Inc.*, 2004 WL 1260309, *10 (10th Cir. June 9, 2004) (affirming grant of summary judgment on retaliation claim based on written reprimand despite the fact that reprimand expressly stated that future infractions could result in termination; it was undisputed that defendant took no further action against plaintiff with respect to the reprimand and plaintiff showed no "immediate or practical effect on her job status"); *accord Young v. White*, 200 F. Supp.2d 1259, 1274 (D. Kan. 2002) (written reprimand did not constitute adverse employment action in the absence of evidence that reprimand had any negative effect on plaintiff's employment; plaintiff remained employed by defendant three years after reprimand), *aff'd*, 2003 WL 21940941 (10th Cir. Aug. 14, 2003).


E.      *Subjecting Plaintiff to Excessive Supervision*

10

Finally, plaintiff contends that defendant retaliated against her by subjecting her to excessive supervision. According to plaintiff, Tom Meier, plaintiff's supervisor, "made it a point to conduct surveillance of Mrs. Goodwin on a daily basis." Even assuming the truth of plaintiff's statement, she fails under established Tenth Circuit precedent to state a claim of retaliation based on Mr. Meier's excessive supervision of her. Specifically, plaintiff cannot demonstrate that the excessive supervision constituted an "adverse employment action" as required to state a retaliation claim. In fact, the Tenth Circuit has repeatedly rejected retaliation claims based on facts that are much more egregious than those set forth by plaintiff here. For example, in *Stover v. Martinez*, 382 F.3d 1064 (10th Cir. 2004), the Circuit rejected a retaliation claim based on a supervisor's alleged retaliatory harassment of the plaintiff because the plaintiff failed to demonstrate that her supervisors' conduct amounted to an adverse employment action. *See id.* at 1075. In that case, the plaintiff alleged that she was moved to an isolated office; she received a performance evaluation lower than previous performance evaluations; and she did not receive work commensurate with her experience. *See id.* Similarly, in *Amro v. Boeing Co.*, 232 F.3d 790 (10th Cir. 2000), the Circuit rejected a retaliatory harassment claim despite evidence that the plaintiff's supervisor, after attending a meeting in which the plaintiff advised his supervisor that he thought he was discriminating against him, called him a "fucking foreigner;" placed his hands around the plaintiff's neck and patted him down, apparently to ascertain whether the plaintiff had a tape recorder; threw drawing papers at the plaintiff, causing a paper cut on plaintiff's neck; demanded to search through a folder that the plaintiff was carrying; and, on two other occasions, spoke unpleasantly to the plaintiff. *See id.* at 795. According to the Circuit, the "unpleasant and vulgar"

11

encounters that the plaintiff had with his supervisor were simply not "sufficiently negative and

pervasive to create an adverse employment action." *See id.* at 798.

In *Heno v. Sprint/United Management Co.*, 208 F.3d 847 (10th Cir. 2000), the Circuit

rejected the plaintiff's "retaliatory harassment" claim where the plaintiff failed to demonstrate that

her supervisor's conduct amounted to an adverse employment action.  *See id.* at 857-58.   There,

the plaintiff showed that her desk was moved to a different location; her telephone calls were

monitored; her supervisor and coworkers acted in a "chilly" manner towards her, which made her

feel isolated; the human resources department refused to further investigate her complaint once

they found out she filed an EEOC complaint; and her supervisor suggested that she might wish to

transfer to another department because her department was shifting to a commission format in

which the plaintiff had previously struggled.   *See id.* at 857. Affirming the district court's grant

of summary judgment, the Circuit stated:

> These facts do not rise to the level of an adverse employment action. "Retaliatory
> conduct other than discharge or refusal to hire is . . . proscribed by Title VII only if
> it alters the employee's 'compensation, terms, conditions, or privileges of
> employment,' or 'adversely affect[s] his [or her] status as an employee.'"  Ms. Heno
> was working in the same job, for the same pay, with the same benefits. Moving her
> desk, monitoring her calls, being "chilly" towards her, and suggesting that she might
> do better in a different department simply did not affect Ms. Heno's employment
> status.

*See id.* (alterations in original) (citation omitted).

Finally, in *Sanchez v. Denver Public Schools*, 164 F.3d 527 (10th Cir. 1998), the Circuit

again affirmed the district court's grant of summary judgment to the defendant on the plaintiff's

"retaliatory harassment" claim where the plaintiff failed to demonstrate that her supervisor's

conduct amounted to an adverse employment action.   *See id.* at 533.   The plaintiff in *Sanchez* alleged that her supervisor, in retaliation for plaintiff's filing an EEOC complaint, made several ageist remarks; required her (but no one else) to bring a doctor's note when she was sick; threatened to write her up for insubordination; and threatened to put her on a plan for improvement. *See id.*  Analyzing these allegations, the Circuit stated:

> This conduct simply does not rise to the level of a materially adverse employment action sufficient to satisfy the second prong of the prima facie case. Courts considering the issue have held that "'unsubstantiated oral reprimands' and 'unnecessary derogatory comments'" such as those alleged here are not included within the definition of adverse action absent evidence that they had some impact on the employee's employment status.
>
> . . . .   It follows that "not everything that makes an employee unhappy" qualifies as retaliation, for "otherwise, minor and even trivial employment actions that 'an irritable, chip-on-the-shoulder employee did not like would form the basis of a discrimination suit.'"

*See id.* (citations and quotations omitted).

Unlike the factual contexts of the cases described above, here there is no evidence that anyone was unpleasant or vulgar to plaintiff.   There is no evidence that anyone made demeaning or derogatory comments to plaintiff or about plaintiff.   Plaintiff alleges only that Mr. Meier subjected her to excessive supervision.   Simply put, plaintiff has failed to demonstrate that Mr. Meier's conduct or any other person's conduct altered her employment in any way.   In the absence of such evidence, the court cannot conclude that plaintiff was subjected to conduct that was severe or pervasive enough to constitute an adverse employment action.   Thus, because plaintiff has failed to present sufficient evidence from which a reasonable jury could conclude that she suffered an adverse employment action, summary judgment in favor of defendant is appropriate on this claim.

13

## IV.    Plaintiff's Racial Harassment Claim

Finally, plaintiff asserts that she was subjected to racial harassment in the workplace.  To state a claim for racial harassment, plaintiff must establish that "under the totality of the circumstances (1) the harassment was pervasive or severe enough to alter the terms, conditions, or privileges of employment, and (2) the harassment was racial or stemmed from racial animus." *Witt v. Roadway Express*, 136 F.3d 1424, 1432 (10th Cir. 1998) (quoting *Bolden v. PRC Inc.*, 43 F.3d 545, 551 (10th Cir. 1994)).   In evaluating whether the alleged harassment is sufficiently severe or pervasive, the court looks at all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  *See Trujillo v. University of Colorado Health Sciences Center*, 157 F.3d 1211, 1214 (10th Cir. 1998) (quoting *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 23 (1993)).   A few isolated incidents of racial enmity are insufficient to survive summary judgment. *Id.* (citing *Bolden*, 43 F.3d at 551).   Rather, plaintiff must show "a steady barrage of opprobrious racial comments." *Bolden*, 43 F.3d at 551.

In support of her claim, plaintiff asserts that Mr. Meier, a white supervisor with less education than plaintiff (according to plaintiff), closely supervised her work; defendant failed to promote her to a Senior Labor Relations Representative position; her managers ignored her opinions on business-related issues; Art Westerfield had a "condescending attitude" toward

14

plaintiff and touched her inappropriately;[2] and Mr. Meier admonished her for visiting with other employees in her office, particularly when those employees were African-Americans.

Plaintiff falls far short of establishing the existence of a racially hostile work environment. Her list of grievances–little more than a collection of unrelated incidents–includes "none of the racial comments or ridicule that are hallmarks of hostile work environment claims." *See Trujillo*, 157 F.3d at 1214. The record is devoid of evidence which would support an inference that any of the conduct about which plaintiff complains stemmed from racial animus. With respect to her allegation that Mr. Meier admonished her for visiting with other employees in her office, the record does not reflect how often Mr. Meier admonished her or how often Mr. Meier interrupted her visits with employees, let alone how often he interrupted her visits with black employees. Moreover, to be clear, Mr. Meier never said anything to plaintiff about the race of the individuals with whom she was visiting; rather, it was simply plaintiff's impression that Mr. Meier interrupted her more frequently when she was visiting with black employees. In short, the conduct about which plaintiff complains is insufficient to support plaintiff's racial harassment claim. *See id.* (affirming summary judgment for defendant on racial harassment claim where plaintiff's evidence was "insufficient to create a jury question that his stressful working conditions were inflicted upon him because of racial animus"); *Bolden*, 43 F.3d at 551 (plaintiff's racial harassment claim failed where plaintiff did not show that ridicule stemmed from racial animus).

---

[2]Although not pertinent to the outcome of plaintiff's claim, the record reflects that Mr. Westerfield, on one occasion, placed one arm around plaintiff's shoulders, placed his other arm around the shoulders of one of plaintiff's male co-workers, and asked both employees how they were doing.

For the foregoing reasons, summary judgment is warranted on plaintiff's claim of racial harassment.

**IT IS THEREFORE ORDERED BY THE COURT THAT** defendant's motion for summary judgment (doc. 32) is granted in part and denied in part.

**IT IS SO ORDERED.**

Dated this 18th day of May, 2005, at Kansas City, Kansas.

s/ John W. Lungstrum
John W. Lungstrum
United States District Judge